**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No. 08-10100-MLB |
| | ) | |
| LUIS DIAZ and STEPHEN DEMALLEO, JR., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendants' joint motion to suppress. (Doc. 28). The motion has been fully briefed and the court conducted an evidentiary hearing on August 1, 2008. (Docs. 29, 35). Defendants' motion is granted for the reasons herein.

**I.    Facts**

On February 22, 2008, at approximately 8:45 in the evening, Kansas Highway Patrol Trooper Jason Duffey was traveling eastbound on Interstate 70 near Colby, Kansas. Defendant Diaz was driving a Chrysler 300 approximately one and one-half mile in front of Duffey. Duffey observed the Chrysler cross the fog line. Duffey accelerated to reach the Chrysler. Duffey then observed the Chrysler cross over the center line by at least six inches on two occasions. The weather was clear and there were no significant wind conditions. Duffey activated his lights and stopped Diaz for failing to keep a single lane. Duffey knocked on the window of the Chrysler and Diaz rolled it down. Duffey questioned Diaz about his travel plans and learned that Diaz was from Springfield, Missouri, and had been in Denver,

Colorado, visiting his daughter and her husband's family.  Defendant Demalleo was the passenger and presented a driver's license from California.  Both defendants were well dressed, Diaz was wearing a button down shirt and Demalleo a knitted sweater.

During the stop, Duffey observed an atlas and a GPS device in the Chrysler.  Duffey also noted that the Chrysler contained two cell phones, miscellaneous food items and trash.  Diaz had rented the car in his name and was returning to his home in Missouri.  Diaz was nervous during the stop and very talkative.  Duffey then returned to his patrol car to write out a warning ticket.  Duffey issued the warning to Diaz, explained the warning and asked Diaz again about his travel plans.  Diaz said that he was going to stop soon and asked Duffey if there was a Holiday Inn close by.  Duffey told Diaz that a hotel was at a nearby exit.  Duffey turned around, took a couple of steps back towards his patrol car and heard the gear selector shift.  Duffey then turned towards the Chrysler and asked Diaz if he could ask some more questions.  Diaz declined and told Duffey "we're done."  Duffey told Diaz to take the keys out of the ignition, hand them over to Duffey and put the car in park.  Diaz complied.

Duffey then called deputy Finley to come to the scene with his drug service dog.  Finley arrived after approximately twenty-five minutes and deployed the dog.  The drug dog alerted and Duffey searched the Chrysler.  The passenger compartment contained two pipes and a cup with crystal methamphetamine.  Duffey also discovered a bottle of methamphetamine oil in the battery compartment.  Duffey seized the evidence and placed defendants under arrest.

Defendants move to suppress the search and seizure of evidence

-2-

from the Chrysler on the basis that it was seized after an unlawful search.

**II.  Analysis**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  The Supreme Court has liberally interpreted "seizures" to encompass routine traffic stops, "even though the purpose of the stop is limited and the resulting detention quite brief." See Delaware v. Prouse, 440 U.S. 648, 653 (1979).  "Because an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest," the stops are analyzed under the principles articulated in Terry v. Ohio. United States v. King, No. 05-6399 (10th Cir. Dec. 18, 2006).  The two-pronged standard espoused in Terry v. Ohio, 392 U.S. 1 (1968), thus applies, see United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001), and renders a traffic stop reasonable if "the officer's action was justified at its inception, and [if] it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20.  An initial traffic stop is justified at its inception if it was "based on an observed traffic violation," or if "the officer has a reasonable articulable suspicion that a traffic . . . violation has occurred." United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998).

The court finds that Duffey was justified in stopping the Chrysler in the first instance.  Duffey observed the Chrysler crossing both the fog and center lines.  See K.S.A. § 8-1522 (stating that the "vehicle shall be driven as nearly as practicable entirely within a

single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."). The Chrysler crossed over the center line and traveled into the shoulder by at least six inches on two separate occasions. Duffey also observed the Chrysler cross the fog line.

Even when the initial stop is valid, any investigative detention must not last "longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983). An officer "conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation." United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005). The uncontroverted testimony shows that Duffey approached the Chrysler upon initially stopping it and then obtained Diaz' driving documents. Duffey returned to his patrol car to write out the warning ticket, which was appropriate. Duffey re-approached the Chrysler, returned Diaz' papers and issued the warning. Therefore, the scope of the traffic stop was reasonably related in scope to the circumstances which initially justified the interference. Terry, 392 U.S. at 20.

After the purpose of the traffic stop is complete, however, "further detention for purposes of questioning unrelated to the initial stop" is generally impermissible. Bradford, 423 F.3d at 1156-57. In general, "lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. Second, further questioning unrelated to the initial

-4-

stop is permissible if the initial detention has become a consensual encounter." Hunnicutt, 135 F.3d at 1349.

In this case, Duffey's further questioning of Diaz was not consensual. Diaz had placed the car in gear to drive away when Duffey asked him if he could ask more questions. Diaz did not agree to further questioning and was ordered to put the car in park and surrender the keys. A reasonable person in Diaz' position would not have felt free to leave. Indeed, he couldn't leave. Therefore, Diaz' conduct cannot be considered consensual. Id. at 1310. Thus, the validity of the search and subsequent seizure of the methamphetamine turns on the existence of a reasonable and articulable suspicion of illegal activity.

In determining whether reasonable suspicion exists, the court again looks to the "totality of the circumstances" to determine if Duffey had a "particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002). Reasonable suspicion may exist even if each factor alone is "susceptible of innocent explanation." Id. at 277 (stating that "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct"). A determination of reasonable suspicion to detain after a traffic stop should be based on the totality of the circumstances. United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998).

In making the determination, each factor is not to be considered in isolation because even though one factor alone may be innocently explained, the factors considered together can support reasonable suspicion. United States v. Lopez, 518 F.3d 790, 797 (10th Cir.

-5-

2008).  The court must "be careful to judge the officer's conduct in light of common sense and ordinary human experience but also to grant deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances." Id.

After considering all of the circumstances surrounding the stop, the court finds that Duffey did not have reasonable suspicion to believe that the Chrysler contained narcotics.  The items observed in the Chrysler are common items that could be found in any car that is traveling across the Midwest, i.e. a cell phone for each occupant, a map, a GPS device, food wrappers and clothing. Bradford, 423 F.3d at 1157 ("[F]ast food wrappers have become ubiquitous in modern interstate travel and do not serve to separate the suspicious from the innocent traveler.")  Those items are not indicative of drug trafficking.  The remaining factors, nervousness, cologne, a rental car in the driver's name, and that Denver and California are drug source locations[1] are not sufficient to rise to the level of reasonable suspicion. United States v. Contreras, 506 F.3d 1031, 1036 (10th Cir. 2007) ("Third-party rental cars" can be often used by drug carriers. Id. (emphasis supplied)); United States v. Salzano, 158 F.3d 1107, 1113 (10th Cir. 1998)(The Tenth Circuit has "repeatedly held that nervousness is of limited significance in determining reasonable suspicion and that the government's repetitive reliance on . . . nervousness . . . 'must be treated with caution.'"); United States v. Kaguras, No. 05-8103, 2006 WL 1585989 (10th Cir. June 9,

---

[1] While this is undoubtedly true, its relevance is becoming shopworn because, based on the testimony in dozens' of similar motions, virtually every large city in every state has become a "known drug source."

-6-

2006)(a rental car and the smell of air freshener did not give rise to objective, reasonable suspicion).  "Although [the court] will consider factors that could have an innocent explanation, there must be something to indicate that criminal activity is afoot."  <u>Kaguras</u>, 2006 WL 1585989, *7.

Based on many cases such as this one, the court knows that experienced, well-trained officers such as Trooper Duffey have the ability to distinguish between innocent and suspicious circumstances. The court is always reluctant to make a ruling which seems to be second-guessing an officer who was on the scene.  Nevertheless, this is one of those relatively rare cases where the totality of the circumstances does not give rise to reasonable suspicion. Accordingly, defendants' joint motion to suppress is granted.  (Doc. 28).  Defendants' joint motion to suppress the cell phone searches (Docs. 29 and 30) is moot.

IT IS SO ORDERED.

Dated this   5th   day of August 2008, at Wichita, Kansas.


                                   s/ Monti Belot
                                   Monti L. Belot
                                   UNITED STATES DISTRICT JUDGE